## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE R. DUNCAN<br>10909 Battersea Lane<br>Columbia, MD 21044,<br><br>Plaintiff,<br><br>v.<br><br>JEH CHARLES JOHNSON, SECRETARY,<br>U.S. DEPT. OF HOMELAND SECURITY<br>3801 Nebraska Ave, NW<br>Washington, DC 20016<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Theodore Duncan, by way of his attorney, Morris E. Fischer, Esq., hereby states the following complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant:

## PARTIES

1. Plaintiff, Theodore Duncan, is an individual citizen and resident of Howard County, Maryland.

2. Defendant, Jeh Charles Johnson, in his official capacity as Secretary for the U.S. Department of Homeland Security.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

4. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. § 2000e(b).

5. Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

## FACTS

6. Plaintiff's date of birth is August 30, 1959.

7. Plaintiff is a single father of three children.

8. Plaintiff has thirty years of government service in the U.S. Navy, U.S. Customs Service and Immigration and Customs Enforcement (ICE).

9. Plaintiff received performance awards in 1993, 1994 and 1995.

10. Plaintiff received Special Act Service awards in 1996 and 1997.

11. Plaintiff received a Group Cash Award in 2005.

12. Plaintiff received a performance based Individual Special Act Service award in 2006.

13. In 2007, Plaintiff received a Performance award, the Assistant Secretary Protecting the Homeland Award and the Bryce Harlow Government Relations award.

14. Plaintiff received performance awards in 2009 and 2011.

15. Also in 2011 Plaintiff received a Certificate of Appreciation from the Department of State, Office of Fraud Prevention Programs.

16. From 2007 to 2008, Plaintiff was employed by Defendant as Acting Deputy Director, Homeland Security Investigations Office of Intelligence.

17. From 2006 through 2013, Plaintiff was employed by Defendant as Deputy Assistant Director, Homeland Security Investigations Office of Intelligence.

18. At all times relevant hereto, Plaintiff was employed by Defendant as an Intelligence Resource Specialist, GS-0132-15, assigned to the Homeland Security Investigations (HIS) Office of Intelligence (Intel), Analysis Division, ICE, located in Washington, D.C.

19. Plaintiff has held various positions with Defendant, progressing through the ranks to Deputy Assistant Director and ultimately to the Acting Assistant Director of Intelligence.

20. Plaintiff was the most senior GS-15/6-0132, Intelligence Research Specialist in ICE, Office of Intelligence.

21. In February 2011, James Chaparro was reassigned as the Assistant Director (AD) to ICE Office of Intelligence.

22. On August 8, 2011, Plaintiff was detailed to ICE Headquarters.

23. The detail represented both a financial and physical hardship on Plaintiff and his family.

24. The detail added three hours and forty minutes to Plaintiff's daily commute not including any heavy traffic.

25. Plaintiff repeatedly complained to management regarding the financial and physical hardship the detail caused.

26. Management took no action based on Plaintiff's complaints.

27. In October 2011, Stephanie Andrews was appointed to serve as the Acting Deputy Assistant Director of Analysis.

28. At that time, Andrews became Plaintiff's supervisor.

29. Andrews was not yet an ICE employee at the time.

30. Andrews had no law enforcement experience at the time.

31. Andrews was appointed to serve as the Acting Deputy Assistant Director of Analysis despite the fact that Plaintiff previously held the position and was already on detail to Headquarters.

32. Plaintiff was demoted without cause.

33. Plaintiff continued to hold the position as his "position of record" at the time that Andrews was appointed.

34. Andrews proceeded to create a hostile working environment for Plaintiff.

35. Andrews' daily harassment of Plaintiff included, but was not limited to, excessive monitoring of Plaintiff; excessive assignment of tasks; targeting Plaintiff as the cause of any problems that arise; and assigning unreasonable deadlines for Plaintiff to satisfy.

36. Andrews' daily harassment of Plaintiff impeded his ability to properly manage his unit and even affected simple tasks such as daily communication with his subordinates.

37. A coworker of Plaintiff's, a Senior Intelligence Official (Hispanic female), complained to James Chaparro and his Deputy Frank Reeder about the hostile working environment created by Andrews.

38. Plaintiff's coworker was told that if she didn't cease her complaints about Andrews she would be terminated.

39. On April 30, 2012, Andrews issued to Plaintiff a nine page Mid-Cycle Review indicating that he was performing below the acceptable level and that he has 30 days to show improvement.

40. On April 30, 2012, Andrews issued to Plaintiff a Letter of Counseling.

41. On May 10, 2012, Plaintiff initiated contact with an Equal Employment Opportunity (EEO) Counselor and filed a complaint against Andrews based on age and gender discrimination.

42. On May 10, 2012, Andrews placed Plaintiff on a Performance Improvement Plan (PIP) for 60 days, which included approximately 11 pages of deficiencies.

43. On June 30, 2012, Andrews suspended Plaintiff for three days for not conducting official business while on emergency personal leave.

44. Andrews falsified documentation to secure Plaintiff's suspension.

45. Plaintiff promptly submitted the letter of suspension to the EEO office to be included as part of his complaint as retaliation.

46. In July 2012, Andrews' daily harassment of Plaintiff continued and intensified.

47. In July 2012, Andrews informed Plaintiff that he failed the PIP.

48. In July 2012, James Chaparro and his Deputy Frank Reeder authorized Plaintiff's position as the Deputy Assistant Director to be announced as a vacancy despite the fact that at the time of the announcement Plaintiff occupied the position as his position of record.

49. On October 15, 2012, Andrews issued to Plaintiff a proposal for suspension without pay for two weeks.

50. On November 6, 2012, Plaintiff learned that he was not selected for the position of permanent Deputy Assistant Director of Analysis.

51. Instead, James Chaparro announced that Stephanie Andrews was selected for the position of permanent Deputy Assistant Director of Analysis and was being hired by ICE.

52. Andrews had just returned from a "boondoggle" trip to Hawaii with Caryn Wagner, Under Secretary for Intelligence and Analysis at the Department of Homeland Security.

53. On November 13, 2012, ICE notified Plaintiff of the conclusion of EEO counseling and Plaintiff's right to file a formal complaint.

54. On December 5, 2012, Plaintiff received notice of suspension of access to classified National Security Information (security clearance). This suspension was based on false allegations by Andrews.

55. From January 16-22, 2013, Plaintiff was suspended without pay for one week.

56. On January 22, 2013, Plaintiff filed a formal complaint based on age and gender discrimination and retaliation.

57. On February 07, 2013, Plaintiff was investigated by the ICE Office of Professional Responsibility (OPR) based on false allegations by Andrews.

58. On January 7, 2014, Plaintiff was involuntarily permanently reassigned from a supervisory GS-15 to a non-supervisory GS-15.

59. On July 28, 2014, a Final Agency Decision was issued.

60. Plaintiff has exhausted all administrative remedies.

61. As a result of Defendant's actions towards Plaintiff, Plaintiff suffered high blood pressure, has been diagnosed with heart disease and uses two coronary stents.

## COUNT I
## DISCRIMINATION BASED ON AGE

Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

62. This action is brought pursuant to the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq., for employment discrimination on the basis of age.

63. Other similarly situated employees not of Plaintiff's age group were not subject to the same conditions of employment as Plaintiff, namely: a) being subjected to a hostile working environment created by Andrews; b) receiving a nine page Mid-Cycle Review indicating that he was performing below the acceptable level and that he has 30 days to show improvement; c) being placed on a PIP for 60 days, which included approximately 11 pages of deficiencies; d) being suspended for three days for not conducting official business while on emergency personal leave; e) not being selected for the position of permanent Deputy Assistant Director of Analysis; f) being suspended without pay for one week; g) being investigated based on false allegations; h) being involuntarily permanently reassigned from a supervisory GS-15 to a non-supervisory GS-15.

64. A causal connection exists between Defendant's actions (delineated above paragraph 48 "a" through "h") and Plaintiff's age.

65. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

66. Defendants' aforementioned actions reflect directly on a discriminatory attitude toward Plaintiff.

67. Defendants' actions constituted a violation Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. Seq.,

68. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

69. Defendant's conduct was malicious, willful and intentional.

## COUNT II
## DISCRIMINATION BASED ON GENDER

70. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

71. Plaintiff suffered discrimination by Defendant, in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) et seq., by: a) being subjected to a hostile working environment created by Andrews; b) receiving a nine page Mid-Cycle Review indicating that he was performing below the acceptable level and that he has 30 days to show improvement; c) being placed on a PIP for 60 days, which included approximately 11 pages of deficiencies; d) being suspended for three days for not conducting official business while on emergency personal leave; e) not being selected for the position of permanent Deputy Assistant Director of Analysis; f) being suspended without pay for one week; g) being investigated based on false allegations; h) being involuntarily permanently reassigned from a supervisory GS-15 to a non-supervisory GS-15.

72. Defendants' aforementioned conduct reflects directly on a discriminatory attitude toward Plaintiff.

73. Defendant's conduct was malicious, willful and intentional.

74. Defendant's aforementioned actions against Plaintiff were based on his gender.

75. Plaintiff's gender was a motivating factor in Defendant's discriminatory treatment of Plaintiff.

76. Plaintiff's gender was the motivating factor in Defendant's discriminatory treatment of Plaintiff.

77. The aforesaid discriminatory treatment of Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions and privileges of his employment.

78. Other similarly situated employees not of Plaintiff's gender were not subject to the same conditions of employment as Plaintiff.

79. A causal connection exists between Defendant's discriminatory actions and Plaintiff's gender.

80. Defendant's actions caused Plaintiff monetary damages.

81. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## COUNT III
## RETALIATION

82. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

83. Plaintiff was retaliated against by Defendant, in violation of Title VII of the Civil
    Rights Act of 1964, and 42 U.S.C. § 2000(e) et seq., by:

    a.  being placed on a PIP for 60 days, which included approximately 11 pages
        of deficiencies;

    b.  being suspended for three days for not conducting official business while
        on emergency personal leave;

    c.  receiving a proposal for suspension without pay for two weeks;

    d.  not being selected for the position of permanent Deputy Assistant Director
        of Analysis;

    e.  being suspended without pay for one week;

    f.  being investigated based on false allegations;

    g.  being involuntarily permanently reassigned from a supervisory GS-15 to a
        non-supervisory GS-15.

84. Defendant's aforementioned actions against Plaintiff were taken in retaliation for
    opposing unlawful employment practices in violation of 42 U.S.C. §2000e-3.

85. Plaintiff engaged in protected activity by filing EEO complaints and reporting age
    and gender discrimination to management.

86. Defendant was aware of Plaintiff's protected activity.

87. The aforementioned actions caused tangible harm to Plaintiff in that they affected
    the terms, conditions and privileges of his employment.

88. Plaintiff's protected activity was the cause of Defendant's aforementioned actions.

89. Other similarly situated employees who did not participate in such complaints were not subject to the same conditions of employment as Plaintiff.

90. A causal connection exists between Defendant's aforementioned actions and Plaintiff's protected activity.

91. Defendant's action caused Plaintiff monetary damages.

92. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, illnesses related to stress, and other damages.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff demands:

A.    Removal from his personnel file:

     i.    Nine page Mid-Cycle Review indicating Plaintiff was performing below the acceptable level and that he has 30 days to show improvement;

     ii.   All suspensions and proposals for suspensions;

     iii.  All documents associated with being placed on a PIP;

     iv.   Letter of Counseling; and

     v.    Any and all other negative information.

B.    Reinstate Plaintiff to the position of permanent Deputy Assistant Director of Analysis;

C.    Maximum compensatory damages;

D.    Attorney fees;

E.    All other relief that the Court deems appropriate.

Respectfully Submitted,

Morris E. Fischer, Esq.
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

## JURY DEMAND

Plaintiff herein demands a jury for all issues to be tried in this case.

Respectfully Submitted,

Morris E. Fischer, Esq.
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff